THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ARCHIE TUCKER, Jr., DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 1, 1960—Decided April 27, 1960.

Before Judges PRICE, GAULKIN and SULLIVAN.

*Mr. Italo M. Tarantola* argued the cause for the defendant-appellant.

Mr. *William L. Boyan,* Deputy Attorney General, argued the cause for the plaintiff-respondent (*Mr. David D. Furman,* Attorney General, attorney).

The opinion of the court was delivered by

GAULKIN, J. A. D. Defendant was convicted upon a complaint which charged him with "misuse of dealer's plates" in violation of *N. J. S. A.* 39:3–18, and he appeals.

The parties have stipulated the following facts:

"John M. Saums, hereinafter called 'dealer,' has been a dealer in refrigeration and heating equipment and kindred lines for the past 25 years, in the Borough of Flemington, County of Hunterdon, State of New Jersey. In the year 1947 said dealer expanded his business by including therein the sale and servicing of farm equipment, machinery, and tractors, and he has since said date continued to operate said combined business. The aforesaid business is operated by John M. Saums individually, as one unit or business, with one set of books and records, in one main office and building, and all office employees, as well as salesmen, employees, and mechanics work on any assigned job, whether it be on the refrigerating or heating equipment part of the business, or on the farm machinery equipment or the tractor part of said business. There are no mechanics or employees assigned to any particular part of the business. The servicing and sale of farm machines, equipment and tractors consists of about 70% of the business of said dealer. Employees are occasionally required to do some plumbing and electrical work in connection with the installation of heating and refrigerating equipment.

Said dealer has, in all, about 14 automobiles and trucks which are used in said business. He has been licensed as a dealer (first by the former Commissioner of Motor Vehicles and then by the Director of Motor Vehicles of the Department of Law and Public Safety) since 1947 and presently has 3 sets of plates, each set containing 5 plates, in accordance with the statute hereinafter mentioned. Each automobile and truck as aforesaid is owned and registered in the name of John M. Saums.

On June 10, 1959, Archie Tucker, Jr., Defendant-Appellant, was a regular employee of the said John M. Saums, and was operating a truck, with dealer's plates thereon owned and registered in the name of said dealer, on a public highway going to the Bordentown Military Institute, either to deliver some pipes or do some plumbing work in connection with equipment that had been purchased by said Institute from the said John M. Saums. Said truck was being used in the regular employment and business of the dealer. Defendant-Appellant was stopped by a member of the New Jersey State Police

and a ticket or summons was issued to him charging him with violation of N. J. S. A. 39:3–18 (as amended)—'Misuse of Dealer's tags.'

At the time of the alleged violation John M. Saums was a duly licensed dealer."

Counsel makes no point of the fact that defendant Tucker was merely the employee of the dealer Saums. *Cf. N. J. S. A.* 39:3–33. The case has been presented to us by appellant as if Saums himself were the defendant, apparently because (to quote defendant's brief) :

"The issue before the Court is one of primary importance * * * as it affects hundreds of dealers * * * to whom the Director has issued dealer's licenses and registrations. Recently *this dealer and other dealers* have been the target of successive summonses alleging violation of this statute."

The sum and substance of defendant's argument is that *N. J. S. A.* 39:3–18 is plain and unambiguous and must be construed to mean (as he says in his brief) that "a *bona fide,* duly licensed dealer in motor vehicles or motor driven vehicles doing business in this state may use his registration and plates on any vehicle owned by him, without limitation save that it is not for hire."

■■ Defendant concedes that if it were not for Saums' status as a dealer, the truck in question would have to be registered as a "commercial vehicle" under *N. J. S. A.* 39:1–1 and *N. J. S. A.* 39:3–20. Therefore, the only question we are called upon to decide is whether registration under section 18 frees a dealer from the obligation of registering under section 20 "commercial vehicles" which he does not use in the dealership but in a non-dealership business. We are of the opinion that registration under section 18 gives a dealer no such exemption from section 20.

Section 20 of the act provides that "an applicant for registration for automobile commercial vehicles * * * shall pay to the director a fee based on the gross weight of the vehicle and load," ranging as high as $240 for a single

vehicle "when the gross weight of vehicle and load" is from 36,000 to 40,000 pounds. This section (amended from time to time to allow for larger vehicles and to raise the fees) has been part of Title 39 since 1921 (*L.* 1921, *c.* 208, § 11, *p.* 659; the last amendment, prior to the issuance of the summons, was by *L.* 1950, *c.* 142, § 1, *p.* 279, effective January 1, 1951).

Section 18 also has been in the statute since 1921 (*L.* 1921, *c.* 208, § 11, *p.* 657). *L.* 1921, *c.* 208, § 11, which provided for dealer's plates, plainly shows that in 1921 the Legislature had no intention of exempting a dealer from the provisions of the very same section requiring the registration of "commercial vehicles," and to pay the fees therefor. However, defendant makes much of the legislative history of that portion of *L.* 1921, *c.* 208, § 11, which dealt with dealer's plates until its evolution into what is now section 18. *L.* 1921, *c.* 208, required the dealer to state in his application that he desired dealer's plates for use on motor vehicles "owned or controlled by him while being operated for purposes of his business or for his personal use, but not for hire," and forbade the use of the plates "on any motor vehicle other than those owned by such dealer and operated by such dealer or his employees or for any purpose other than the personal use of the dealer, or demonstrating said vehicle to a prospective purchaser or testing or removing same from storage place, shipping point or place of delivery before or after sale." Defendant says *L.* 1926, *c.* 192, *p.* 318, removed these narrow limits by amending the latter portion of the section, quoted above, to provide that "dealer's plates shall be issued to *bona fide* dealers only, and said plates shall be used only on motor vehicles owned by such dealers; nor shall any dealer lend dealer's plates to any person or persons whatsoever for display upon any motor vehicle not exclusively owned by said dealer." But defendant fails to note that said *L.* 1926, *c.* 192, retained the provision that the applicant for dealer's plates must certify that he desires to use the plates on

vehicles "owned or controlled by him while being operated for purposes of his business as a dealer * * *", and that later in the same law (*L. 1926, c. 192, p. 321*) the precursor of section 20 was amended.

Defendant then points out that by *L. 1934, c. 123, p. 330,* tight restrictions were again imposed upon the use of dealer's plates, by a provision that "such plates shall only be placed on any vehicle * * * operated exclusively for his business and not for hire." However, says defendant, in 1951 the Legislature removed all restrictions (except ownership and hiring) by amending that paragraph of section 18 (*L. 1951, c. 4, p. 23*) which relates to dealers as follows:

"A *bona fide* dealer in motor vehicles, motor-drawn vehicles or motor cycles doing business in this State * * * may, with regard to motor or motor-drawn vehicles or cycles owned by him, obtain general registration and registration plates therefor * * * with the letter 'D' stated thereon. Such plates shall only be placed on any vehicle or cycle owned by such dealer; and *provided,* such vehicle is not used for hire."

Defendant's brief says (emphasis ours) that this legislative history proves that

"the only limitation for legally using dealer's plates is that the vehicle to which they are attached must be 'owned by such dealer' and 'not for hire.' All former restrictions and limitations relating to use were removed by the Legislature.

We submit that this progressive removal of limitations in the right to use the plates was intentional and clearly indicates the legislative intent to make the right to use the dealer's plates dependent solely upon 'ownership' and not 'use' of the vehicle, provided only that such vehicle was not used for hire. *We find implicit in such action realistic recognition by the Legislature of modern-day economic conditions of combined and diversified activities in one business under one ownership.*"

The statute defines "dealer" as "every person actively engaged in the business of buying, selling or exchanging motor vehicles and motor cycles and who has an estab-

lished place of business," and provides that "person includes natural persons, firms, co-partnerships, associations, and corporations." *N. J. S. A.* 39:1–1. If the construction contended for by defendant were correct, it would mean that a "person" who operates a fleet of trucks to deliver goods which he sells (as, for example, lumber, coal, oil or machinery) in one branch of his business would be exempt from the payment of thousands of dollars in "commercial vehicle" registration fees if another branch of his business were that of motor vehicle or motor cycle dealer. At times department stores have sold motor cycles and even automobiles and, with the advent of small cars, they may do so again. Defendant's construction of section 18 would permit such a department store to put dealer's plates on all its delivery trucks. Similarly, if a corporation, engaged in excavating, road-building, or heavy construction, or in the lumber or building materials business, were to take on a truck or other motor vehicle dealership, the corporation would avoid not only the payment of the fees for registering "commercial vehicles" up to 40,000 pounds, but also would be exempt from that portion of section 20 which provides that in addition to the registrations for vehicles up to 40,000 pounds "the director shall issue registrations providing for the gross weight of vehicle and load of over 40,000 pounds * * * upon application therefor and proof * * * that the applicant is actually engaged in construction work or in the business of supplying material, transporting material, or using such registered vehicle for construction work," at a cost of $15 per thousand pounds of gross weight of vehicle and load.

The language of section 18 is ambiguous and does invite the question now raised by defendant as to its meaning. However, for the reasons stated above, we have no doubt that the Legislature did not intend by *L.* 1951, *c.* 4, to create the enormous exception to section 20 contended for by defendant.

■ Defendant argues that, even if the Legislature did not intend to present dealers with the boon claimed by him, the language of *L.* 1951, *c.* 4, gave it anyway; and that we have no choice but to enforce section 18 as it reads. "But statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good discretion.'" *Schierstead v. City of Brigantine,* 29 *N. J.* 220, 230 (1959). In that case the Supreme Court said (at *page 231*):

"In the *Lloyd* case [*Lloyd v. Vermeulen,* 22 *N. J.* 200 (1956)] this court referred to Judge Learned Hand's well-known remark that 'there is no surer way to misread any document than to read it literally.' *Guiseppi v. Walling,* 144 *F.* 2d 608, 624, 155 *A. L. R.* 761 ' (2 *Cir.* 1944), affirmed *sub nom. Gemsco, Inc. v. Walling,* 324 *U. S.* 244, 65 *S. Ct.* 605, 89 *L. Ed.* 921 (1945). In the *Merrill* case [*In re Merrill,* 88 *N. J. Eq.* 261 (*Prerog.* 1917)] the court noted that where a literal reading of the statute leads to absurd consequences 'the court must restrain the words' and seek the true legislative intent. And in the *May* case [*May v. Board of Com'rs. of Town of Nutley,* 111 *N. J. L.* 166 (*Sup. Ct.* 1933)] the former Supreme Court had this to say:

'It is an established rule in the exposition of statutes that the intention of the legislature is to be derived from a view of the whole and of every part of the statute, taken and compared together. The real intention, when ascertained, will prevail over the literal sense of terms. When words are not explicit the intention is to be collected from the context and the occasion and necessity of the law and from the mischief felt, and the remedy in view; and the intention is to be taken or presumed according to what is consonant to reason and good discretion. The meaning of general words must be restricted whenever it is found necessary to carry out the legislative intention. The reason and spirit of the statute controls in its interpretation. *Lynch v. City of Long Branch,* 111 *N. J. L.* 148.'"

Not only do "the reason and spirit of the statute" lead us to reject defendant's contention but, in addition, the words of section 18 do not rightfully warrant a construction inconsistent with that reason and spirit. Defendant interprets section 18 as conferring a privilege personal to the individual who happens to be the dealer to whom dealer's plates are issued, much as "benefit of clergy" attached as an incidental benefit to those not of the cloth who purchased titles or positions or were able to read. We do not

read section 18 in that fashion. We read it as conferring the privilege of using dealer's plates upon the dealer as dealer, *i. e.,* upon the dealership. If the "person" who is the dealer is engaged in other businesses which involve uses of motor vehicles regulated by other sections of the statute, such as section 20, he must comply with those statutes.

Affirmed.